IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| PATRICIA JOYCE PATTERSON, | ) |
| | ) |
| PLAINTIFF, | ) |
| | ) CIVIL ACTION NO.: |
| v. | ) 2:22-cv-99 |
| | ) |
| | ) DEMAND FOR JURY TRIAL |
| THOMAS J. VILSACK | ) |
| SECRETARY | ) |
| U.S. DEPARTMENT OF AGRICULTURE, | ) |
| | ) |
| DEFENDANT. | ) |

## ORIGINAL COMPLAINT

### NATURE OF THE CASE

This is an action alleging race discrimination and retaliation in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e, et seq. ("Title VII") and Title I of the Civil Rights Act of 1991 brought by Plaintiff Patricia Joyce Patterson against the Defendant, U.S. Department of Agriculture ("USDA" and or "Agency"). Plaintiff is seeking equitable, monetary relief, and injunctive relief to correct unlawful employment practices on the basis of race, pursuant to Title VII against Defendant. This case involves allegations of discrimination, under the disparate treatment theory of discrimination.

### JURISDICTION

1.   Jurisdiction of this Court is invoked pursuant to 28 U.S.C. § 1331 and 1343, as well as Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e, et seq. ("Title VII")., and pursuant to Section 102 of the Civil Rights Act of 1991.

1

## VENUE

2. Venue is proper in this district because, pursuant to 28 U.S.C. § 1391(b)(2), the matters contained and pleaded herein as all incidences, facts, acts and or omissions occurred in the Middle District of Alabama.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

3. Plaintiff timely filed with the Equal Employment Opportunity Commission ("EEOC") her charges of discrimination within one hundred eighty (180) days of occurrence of each discriminatory act. Plaintiff also timely filed this Complaint within ninety (90) days of receipt of a Notice of Right to Sue issued by the EEOC against Defendant. The Plaintiff has fulfilled all conditions precedent to the institution of this action under 42 U.S.C. §12117.

## PARTIES

4. Plaintiff Patricia Joyce Patterson (hereinafter "Patterson" or "Plaintiff Patterson"), an African-American female who, at all times material, is over the age of 19, a citizen of the United States and is a resident of the city of Pike Road in Montgomery County, State of Alabama.

5. Defendant USDA is an executive branch agency of the United States of America.

6. Defendant Thomas J. Vilsack is the Secretary of Agriculture. He has a statutory duty to comply with Title VII, and the agency's own regulations. He is sued in his official capacity only.

## FACTUAL ALLEGATIONS

7. The foregoing paragraphs are re-alleged and incorporated by reference herein.

8. Plaintiff Patterson is an African American, female. Her race and gender have been known by Defendant at all times material.

9. In 1992, Plaintiff received her doctorate degree in veterinary medicine from Tuskegee University.

10. Plaintiff first applied to be a veterinarian with the Agency in 1992.

11. After interviewing on the phone, Plaintiff received a package from then Agency for selective consideration to take an examination and complete orientation.

12. Plaintiff was instructed to appear at the Agency's Area Office in Tallahassee, Florida on January 25, 1993, and meet with Assistant Area Supervisor Dr. Robert Smith (race/Caucasian, sex/male).

13. Plaintiff was told that she would have to use her own funds to travel from Montgomery, Alabama to Tallahassee, Florida. Dr. Smith told her that she would be reimbursed after she completed orientation.

14. Specifically, Plaintiff alleges that Dr. Smith told her she would receive advanced travel funds or a Diner's Club government credit card. Assistant Area Supervisor Earl V. Brown (race/Black, sex/male) met with Plaintiff for lunch during her orientation on January 25, 1993, and warned her to be "very, very careful through her first probationary year."

15. Mr. Brown also told Plaintiff that she was the first Black female veterinarian in Alabama within the Agency.

16. Upon completing orientation, Plaintiff asked Martha "Marty" Peeples (race/Caucasian) ("Ms. Peeples"), about the travel funds and reimbursement. Ms. Peeples told her to speak with Dr. Smith.

17. Dr. Smith told her to speak with Area Supervisor Thomas Barlow (race/Caucasian, sex/male) ("former Supervisor Barlow").

18. On January 26, 1993, Plaintiff met with former Supervisor Barlow, Ms. Peeples and Mr. Brown to secure funds to travel to Guntersville, Alabama where Plaintiff was required to complete training. However, the Agency's advancement of travel funds or its issuance of a

government credit card to Plaintiff did not occur.

19. During this meeting, Plaintiff explained how it was financially and physically impossible for her to proceed to Guntersville, Alabama without funds for travel and hotel accommodation. Plaintiff had a newborn son, three other children, and no money.

20. Former Supervisor Barlow told Plaintiff that she needed to proceed to Guntersville, Alabama, or resign from her newly-appointed position.

21. In response, Plaintiff told him she had no choice financially and resigned by rendering her badge and identification card.

22. Plaintiff later received a letter dated January 26, 1993, from former supervisor Barlow that read in relevant part: "Your failure to follow up instructions to report to the training facility in Guntersville, Alabama, and your returning your badge and identification card leaves me no alternative but recommend that your employment be terminated."

23. Plaintiff sent a response letter to former Supervisor Barlow, dated January 29, 1993, that read in relevant part: "In our conference, you indicated that I should report to the Guntersville plant by 11:30 a.m. January 27, 1993, or resign my newly appointed position. I immediately informed you that I was not refusing to obey your instructions. However, it was not possible for me to comply for financial reasons. Once again you indicated that I should report or resign. Thus, I rendered my badge as an indication of my voluntary resignation."

24. Plaintiff sent a similar letter to J.D. Willis (race/Caucasian, sex/male), Regional Director of the FSIS in Tallahassee, Florida, who was Supervisor Barlow's immediate supervisor.

25. In the letter to former Supervisor Barlow, Plaintiff stressed "I did not refuse to resign. I rendered my badge. Since I rendered my badge AWOL and non-voluntary separation should not be a concern."

26.   Plaintiff received a signed receipt card for both letters, sent certified mail.

27.   Plaintiff never got a letter stating it was resolved.

28.   It was Plaintiff's understanding that her letters would rectify the resignation matter, as she never received anything saying her termination status would not be corrected.

29.   Acting on the assumption that her termination had been corrected to reflect a resignation, Plaintiff applied to other veterinarian positions within the Agency between 1993-1998.

30.   Plaintiff was offered no jobs by any federal agency during that time.

31.   On or around January 11, 1998, Plaintiff received a letter of inquiry for a Veterinary Medical Officer position in New Brockton, Alabama, signed by Catherine Strub (race/unknown, sex/female).

32.   On March 5, 1998, Plaintiff received a letter informing her that she was being considered for the position, and her continued consideration was contingent upon the receipt and approval of some additional information, including that she pass a physical examination and get fingerprinted. Plaintiff completed the was fingerprint requirement on March 19, 1998, Plaintiff completed her physical examination on March 17-18, 1998.

33.   In submitting these materials to the Agency, Plaintiff included the required fingerprint card, which indicated that she was a Black/African-American female.

34.   It was not until on or around March 27, 1998, in a letter from Personnel Staffing Specialist Linda Hicke (race/Caucasian, sex/female) ("PSS Hicke"), that Plaintiff learned of documentation in her OPF stating that she was terminated on February 5, 1993.

35.   The letter read, "Your declaration of federal employment OF-306 appears to have been falsified."

36.   On April 6, 1998, Plaintiff mailed a response to PSS Hicke explaining that she was not

terminated; this correspondence included both 1993 letters to former Supervisor Barlow and Dr. Willis attached as exhibits.

37. Plaintiff subsequently filed a formal complaint against the Agency on November 9, 1998.

38. On December 6, 1999, Plaintiff went to Washington D.C. to participate in Alternative Dispute Resolution ("ADR") without counsel.

39. According to Plaintiff, the Agency representative, Arthur Simmons (race/unknown, sex/male) ("Mr. Simmons"), offered to electronically clean her personnel file, give her a position in Jack, Alabama, and pay her $30,000.

40. Plaintiff refused to sign the mediation because she wanted her record to be purged at the time and did not want to work in Jack, Alabama.

41. According to Plaintiff, Mr. Simmons assured her that the termination designation on her official personnel file or folder statement was going to be removed and replaced with her resignation.

42. Following the mediation on December 17, 1999, Plaintiff wrote to her U.S. Senator, Richard Shelby, informing him of the situation and asking if he could assist her.

43. In response, Senator Shelby's office sent a copy of the letter to J. David Carlin, Assistant Secretary for Congressional Relations (race/unknown, sex/male).

44. Deputy Administrator Ronald Hicks (race/unknown, sex/male) ("Mr. Hicks") responded to Senator Shelby by letter on March 3, 2000. Senator Shelby forwarded this letter to Plaintiff.

45. In Mr. Hicks's letter, he referred to Plaintiff as "a veterinarian who resigned her position" with the Agency and promised to reimburse her for costs in traveling to Washington D.C. for the mediation.

46. Plaintiff relied upon this letter to further establish her resignation status.

47. In the years that followed, Plaintiff applied for numerous positions and worked in private practice until 2009.

48. Plaintiff was not aware that the termination was not removed until 2010, when she applied online for two positions with the Agency and received a written response telling her she was ineligible.

49. When Plaintiff called Human Resources to inquire why she was ineligible, she spoke with various individuals including Employee Resources Specialist Mary Kathryn Acker (race/Caucasian, sex/female).

50. In a June 9, 2010, telephone call, Ms. Acker told Plaintiff that she was still listed as terminated in 1993.

51. The Agency maintains to this very day that Plaintiff was terminated by the Agency in February 1993, even though the record evidence, overwhelmingly, indicates otherwise.

52. As a result of being unable to find federal employment after being listed as having been terminated by the Agency, she was never offered another federal job between 1993 and 1998, except the Veterinary Medical Officer position in New Brockton, Alabama rescinded by the Agency in March 1998.

53. Due to the Agency's actions in not changing her OPF status from a "termination" to a "resignation," Plaintiff was incapable of being hired in a federal job position for a period of time that spanned nearly thirteen (13) years, from March 1998 to February 2011. This action by the Agency was severe and of a long duration.

54. Plaintiff has not had the opportunity to use her training, has not had the opportunity to earn a salary commensurate with her education as a veterinarian, and her whole life had been changed by the Agency's actions.

## CAUSES OF ACTION

### COUNT 1
### (Race Discrimination by Adverse Employment Action Against Plaintiff Patterson in Violation of Title VII of the Civil Rights Act of 1964, As Amended)

55. The foregoing paragraphs are re-alleged and incorporated by reference herein.

56. Title VII makes it unlawful for an employer "to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, or national origin." 42 U.S.C. § 2000e-2(a)(1).

57. Plaintiff Patterson has established a *prima facie* case of racial discrimination due to the fact: (a) Plaintiff's race is African American;

(b) Plaintiff suffered an adverse action by the Agency in that her Standard Form 50 ("SF-50"), Notification of Personnel Action indicated that she was terminated by the Agency on February 5, 1993, when it should have indicated that she resigned. Complainant would have been employed by the Agency in 1998 had the Agency not rescinded the employment offer due to the incorrect status of her January 25, 1993, resignation, thereby, making the Agency's action of rescinding the Supervisory Veterinary Medical Officer job offer in New Brockton, Alabama, an action that produced a materially adverse change in the terms of potential employment for Complainant with the Agency.

(c) Plaintiff Patterson can show that the Agency's proffered legitimate, nondiscriminatory explanations for its actions, contains such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions, that a reasonable fact finder could rationally find them unworthy of credence.

58. The unlawful employment practices complained of were intentional.

59. The unlawful employment practices complained of above were done with malice or with reckless indifference to the federally protected rights of Patterson.

60. Plaintiff Patterson is now suffering and will continue to suffer irreparable injury from the Defendant's unlawful policies and practices as set forth herein unless enjoined by the Court.

61. As a result of the Defendant's actions, Plaintiff Patterson has suffered extreme harm, including, but not limited to, loss of employment opportunities, denial of wages, compensation and other benefits and conditions of employment.

62. Additionally, Plaintiff Patterson has suffered further injury, including pain, humiliation, mental anguish and suffering and loss of enjoyment of life.

63. Plaintiff is entitled to reasonable attorneys' fees and costs of suit.

## COUNT 2
### (Retaliation Against Plaintiff Patterson in Violation of Title VII of the Civil Rights Act of 1964, As Amended)

64. The foregoing paragraphs are re-alleged and incorporated by reference herein

65. To establish a prima facie case of retaliation forbidden by Title VII, Plaintiff Patterson must show that: (1) she participated in an activity protected by Title VII; (2) she suffered an adverse employment action; and (3) there is a causal connection between the participation in the protected activity and the adverse employment decision. *Gupta v. Fla. Bd. of Regents*, 212 F.3d 571, 587 (11th Cir. 2000). *Satchel v. School Bd. of Hillsborough County*, 251 Fed. Appx. 626, 628 (11th Cir. 2007).

66. Plaintiff Patterson notified the Defendant that she believed that she was the victim of race discrimination in violation of Title VII.

67. Defendant's proffered reason for Plaintiff Patterson's non-selection was a pretext for discrimination because of her race and in retaliation for Plaintiff Patterson's opposition to Defendant's unlawful employment practices.

68. As a result of Defendant's continued retaliatory actions, as set out above, Plaintiff Patterson has suffered extreme harm, including, but not limited to, loss of employment opportunities, denial of increased wages, compensation, and other benefits and conditions of employment. Additionally, Plaintiff Brookins has suffered injury, including pain, humiliation, mental anguish and suffering, and loss of enjoyment of life.

69. Plaintiff is entitled to reasonable attorneys' fees and costs of suit.

## PRAYER FOR RELIEF

Wherefore, the Plaintiff respectfully requests that this Court:

A. Issue a permanent injunction enjoining Defendant, its officers, agents, servants, employees, and all persons in active concert or participation with it, from engaging in unlawful employment practices that discriminate on the basis of race, including harassment and the creation of a hostile work environment based on race in violation of 42 U.S.C. § 2000e.

B. Order Defendant to institute and carry out policies, practices, and programs that provide equal employment opportunities for female employees and that eradicate the effects of Defendant's past and present unlawful employment practices.

C. Order Defendant to make whole Patterson by providing compensation for past and future pecuniary losses and all other monetary, including but not limited to retirement benefits, step pay increases, career-ladder progressions and pay increases, Cost of Living Adjustments ("COLAs"), leave (annual, sick, award, etc.) resulting from the unlawful

employment practices described above, in amounts to be determined at trial.

A.   Order Defendant to make whole Patterson by providing compensation for past and future nonpecuniary losses resulting from the unlawful employment practices complained of above, including emotional pain, suffering, inconvenience, and humiliation, in amounts to be determined at trial.

B.   Order Defendant to pay Patterson punitive damages for its malicious and reckless conduct, as described above, in amounts to be determined at trial.

C.   Grant such further relief as the Court deems necessary and proper as the cause of justice may require, including, but not limited to, an award of attorney's fees, costs, post-judgment interest, expenses, etc. as available under law.

D.   Other damages, injunctive, declaratory, and further relief as deemed just and available under law.

**PLAINTIFF DEMAND TRIAL BY JURY ON ALL CLAIMS**

**RESPECTFULLY SUBMITTED** on February 25, 2022

_/s/ J. Carlton Sims, Jr._
J. Carlton Sims, Jr. (SIM091)
Counsel for Plaintiff Patterson

J. Carlton Sims, Jr.
Attorney at Law
Post Office Box 373
Montgomery, AL 36101-0373
334.328.2294
jcsimslegal@gmail.com

**OF COUNSEL:**
Gary E. Atchison (ATC004)
Attorney at Law
P.O. Box 2002
Montgomery, AL 36102-2002
(334) 354-2000

**DEFENDANTS TO BE SERVED**
To Be Served by Certified Mail:

General Counsel
U.S. Department of Agriculture
1400 Independence Avenue, SW
Washington, DC 20250

Who to Serve:
General Counsel, Authorized agent to accept legal documents designated by the Department of Agriculture via certified mailing.